# EXHIBIT A

| | |
|---|---|
| District Court<br>Arapahoe County, Colorado<br>Court Address:<br>7325 S. Potomac St.<br>Centennial, CO 80112 | DATE FILED: March 14, 2023 12:08 PM<br>FILING ID: 4E04866B750D6<br>CASE NUMBER: 2023CV30502 |
| Plaintiff(s):<br><br>**Carson Geber**<br><br>v.<br><br>**EquipmentShare.com Inc.**<br><br>**Jeff Waites, Individually**<br><br>**Chad Shubin, Individually**<br><br>Defendant(s): | ▲ COURT USE ONLY ▲ |
| Attorney for Plaintiff:<br>James W. McQuade, LL.M<br>Heckenbach Law PC<br>7400 East Orchard Road Suite 270S<br>Greenwood Village, CO 80111<br>Phone Number: 303.858.8000<br>E-mail: JMcquade@hmpclawyers.com<br>Atty. Reg. #: 36110 | Case Number:<br><br>Division         Courtroom |
| **COMPLAINT AND JURY DEMAND** ||

Plaintiff Carson Geber ("Plaintiff'), by its attorney, James W. McQuade, LL.M of Heckenbach Law P.C., files his Complaint against EquipmentShare.com, Inc., Jeff Waites, and Chad Shubin (referred to as "Defendants") and alleges as follows:

## PARTIES

1. Plaintiff, Carson Geber, is a resident and citizen of the State of Colorado with his residence at 762 West Caley Ave. Littleton, Colorado.

2. Upon information and belief, at all relevant times, Defendant EquipmentShare.com Inc. was and is a Foreign Corporation company organized and existing under the laws of the State of Delaware.

1

3. Upon information and belief, at all relevant times Defendant, Jeff Waites, is a resident and citizen of the State of Colorado.

4. Upon information and belief, at all relevant times Defendant, Chad Shubin, is a resident and citizen of the State of Colorado.

5. This Court has personal jurisdiction over each of the Defendants under C.R.S. § 13-1-124(1)(a) as each of the Defendants transacts or transacted business in Colorado.

6. Venue in this district is proper because an action shall be tried in the county in which the Defendants, or any of them, may reside at the commencement of the action. C.R.C.P. 98(c).

## FACTS

7. Defendant hired Plaintiff in September of 2019.

8. The Defendant is an at-will employer.

9. Defendant hired Plaintiff as a Retail Sales representative and Account Manager.

10. Plaintiff remained as a Retail Sales representative and Account Manager from September 2019, through his termination in July of 2022

11. The Plaintiff had good operational knowledge, good communication skills, working with the front line and the supervisors, and having good relationships with customers.

12. Prior to his termination, Plaintiff's revenue figures totaled $4,267,190. Plaintiff opened 19 new accounts in June and 13 new accounts in May.

13. Plaintiff's base salary was $24,500.00 and a four percent (4%) commission from this revenue.

14. Plaintiff's projected annual pay based on growth from the last 6 months including new accounts, delivery revenue, etc. was estimated to be approximately $439,047.00.

15. On July 14th, 2022, Plaintiff attended a Colorado Rockies baseball game with his clients Nathan Hardage and Heath O'Keefe of Judd Caissons Inc. Plaintiff's former manager, Mr. Waites, purchased the tickets to the Colorado Rockies baseball game and encouraged Plaintiff

to attend. At the game, Plaintiff consumed no more than 3 beers during a six-hour period which can be confirmed by Mr. Hardage and Mr. O'Keefe.

16. The Plaintiff left the Rockies game in his work vehicle (Chevy Silverado) into bumper-to-bumper traffic in downtown Denver and was involved in a minor accident with the vehicle in front of him. The accident did not result in any injuries to the driver or their passengers.

17. Two Denver police officers responding to the incident did not have any suspicion of intoxication after spending almost two hours with Plaintiff. Despite the responding officers finding no signs of intoxication and Defendant required Plaintiff to submit to a breathalyzer and urinalysis testing at "Wiz-Quiz," a drug testing facility located at 7585 W. Arkansas Ave in Lakewood, Colorado.

18. Plaintiff was the only employee required to submit to a breathalyzer and urinalysis testing despite being the fourth person in the sales department to be involved in an accident in the past year. After Plaintiff traveled to the breathalyzer and urine analysis the drug test administrator released Plaintiff because his results were 0.08, which is the legal limit in Colorado. Defendant's post-accident requirement that Plaintiff submit to a breathalyzer and urinalysis testing was an invasion of privacy sufficient to breach the public policy statutory provision prohibiting employers from requiring an employee to submit to urinalysis testing without reasonable suspicion.

19. On July 27, 2022, at a meeting with Mr. Shubin and Mr. Waites Plaintiff was told to resign from Defendant or he would be fired. Mr. Shubin and Mr. Waites told Plaintiff that he should resign because it would look better in his future job search. Mr. Shubin and Mr. Waites both agreed to give Plaintiff a positive reference letter for any future employers. Mr. Shubin and Mr. Waites assured the Plaintiff he would be eligible to apply for unemployment benefits if he resigned, which was false. Plaintiff was coerced into signing a resignation document by Mr. Waites and Mr. Shubin.

20. At this meeting, Plaintiff inquired as to why he was asked to take a breathalyzer test when his colleagues in the same position were not required to do the same. Mr. Shubin instructed Mr. Waites not to answer that question.

21. The termination paperwork stated that the reason for termination was for a "violation of impairment-free workplace policy" and "driver safety policy." Plaintiff was completely unaware of these policies prior to receiving this paperwork. The field in the document which stated whether the termination was voluntary or involuntary was intentionally left blank.

22. Plaintiff's termination was only four days before his insurance policy was set to be renewed which created a temporary gap for his pregnant wife's insurance coverage, as the paperwork from Anthem BCBS did not get delivered until early August.

23. After his wrongful termination, Mr. Waites called Plaintiff three times and demanded that he not contact any former customers, reminding him of his non-compete agreement.

24. Mr. Waites called Plaintiff's personal number two other times; however, Plaintiff did not answer the calls as he felt intimidated and harassed. Mr. Waites also contacted Michael Zarlengo, a former client. Mr. Waites instructed Mr. Zarlengo to advise Plaintiff that if he violated the non-compete agreement that Defendant would "come after him." Mr. Shubin continued to harass and intimidate Plaintiff so that he would not contact his former customers. Clearly, the intent of Mr. Waites and Mr. Shubin was to harass, threaten and intimidate Plaintiff, so that they could acquire his clients which he had procured.

25. Defendants continue to intentionally cause damage to Plaintiffs reputation in the construction industry which he has been working to build for the last seven years. As a result, Plaintiff is unemployable in the construction industry and has sought therapy due to the mental distress this has caused him and his family.

26. By reason of the foregoing, Plaintiff has suffered damages, including back pay, loss of future pay, and loss of benefits, and damages for mental suffering.

## COUNT I
## WRONGFUL TERMINATION
**Wrongful (Retaliatory) Termination in Violation of Public Policy**
**(Against Defendant Equipmentshare.com, Inc.)**

27. Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 26 of this complaint as though fully set forth at length herein.

28. Plaintiff was pretextually wrongfully discharged because he engaged in conduct that is protected or encouraged as a matter of public policy for performing part of employee's work-related duties directed by his former supervisor and Defendant.

29. The Defendant discharged Plaintiff in retaliation for exercising a job-related right or performing a specific statutory duty, and clearly expressed public policy.

30. On July 14, 2022, Plaintiff attended a Colorado Rockies baseball game with a client in which Defendant purchased the tickets and encouraged him to attend.

31. After, the game Plaintiff was involved in a minor accident in a work vehicle. The responding Police Officer did not suspect any crime had been committed and issued a traffic citation.

32. Shortly thereafter, Defendant required Plaintiff to submit to a breathalyzer and urinalysis testing at "Wiz-Quiz" a drug testing facility located at 7585 W. Arkansas Ave in Lakewood, Colorado approximately 27 minutes or 10.8 miles from the scene of the accident.

33. Prior to Plaintiff's termination, Defendant sent Plaintiff a "new policy" stating that the company policy for alcohol tolerance is 0.02 BAC. The company clearly created this policy around Plaintiff's incident as an excuse to terminate.

34. On July 27, 2022, Plaintiff was terminated for violating the company's zero tolerance for alcohol. However, Plaintiff was engaging in lawful activity off premises and tested below the legal limit in Colorado.

35. Plaintiff was terminated as a pretext based upon on improper motive to wrongfully obtain his

5

clients which he procured.

36. Plaintiff continues to receive threatening calls and text messages from Defendant regarding his Non-compete Agreement which further demonstrates the reason for his termination was done for an unlawful purpose and is accompanied by willful and wanton conduct and when damages are natural and proximate consequence of such conduct.

37. Plaintiff has suffered significant damages including lost pay, lost benefits, and emotional distress. Plaintiff is unable to find employment because of the non-compete agreement which has increased his financial losses.

### COUNT II
### BREACH OF IMPLIED CONTRACT
**(Against Defendant Equipmentshare.com, Inc.)**

38. Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 26 of this complaint as though fully set forth at length herein.

39. Defendants' failure to follow termination procedures contained in the employment manual policies for employee termination did create an implied contract which would alter the at-will nature of employment relationship and support a wrongful discharge claim.

40. The Plaintiff reasonably construed the termination procedures contained in the employment manual policies procedures as being binding on the Defendant. Plaintiff was forced to sign both termination and resignation paperwork by Jeff Waites (Denver Sales Manager), Chad Shubin (Regional Director of Sales), and Zach Sullivan (Regional VP of Sales).

41. The 'Reason for Termination' was deliberately left blank by Chad Shubin and Jeff Waites. The termination paperwork stated that the reason for termination was for a "violation of Defendant's impairment-free workplace policy," and "driver safety policy."

42. Despite Plaintiff being completely unaware of these policies prior to receiving this paperwork. The field in the document which stated whether the termination was voluntary or involuntary was intentionally left blank.

43. Plaintiff inquired as to why he was asked to take a breathalyzer test when his colleagues in the same position were not required to do the same. Mr. Shubin instructed Mr. Waites not to answer that question.

44. Mr. Shubin and Mr. Waites told Plaintiff to resign, or he would be fired. Mr. Shubin and Mr. Waites told Plaintiff that he should resign because it would look better in his future job search.

45. Mr. Shubin and Mr. Waites both agreed to give Plaintiff a positive reference letter for any future employers. No reference letter has been written.

46. Mr. Shubin and Mr. Waites promised Plaintiff would be eligible to apply for unemployment benefits if he resigned, which was false. Plaintiff was wrongfully discharged because Defendant's internal management policies for employee termination did create an implied contract.

47. Plaintiff is entitled to economic damages, including back pay, loss of future pay, and loss of benefits, and damages for mental suffering.

## COUNT III
## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS
### (Against all Defendants)

48. Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 26 of this complaint as though fully set forth at length herein.

49. Defendants' officer and directors Jeff Waites (Denver Sales Manager), Chad Shubin (Regional Director of Sales), acted outside the scope of their official duties motivated solely by prospective financial advantage and the desire to induce the Defendant to breach its contract with the Plaintiff and to improperly interfere in their employment relationship.

50. Mr. Waites contacted Plaintiff three times and demanded that he not contact any former customers, reminding him of his non-compete agreement. Mr. Waites called Plaintiff's personal number two other times; however, Plaintiff did not answer the calls as he felt intimidated and harassed.

51. Mr. Waites also contacted Plaintiff's former client, Michael Zarlengo. Mr. Waites instructed

7

Mr. Zarlengo to pass along to Plaintiff that if he violated the non-compete agreement that Defendant would "come after him." Mr. Shubin continued to harass and intimidate Plaintiff so that he would not contact his former customers.

52. On January 21, 2023, and January 30, 2023, Defendant sent threatening text messages to Plaintiff which stated "Scum, we are already doing everything to ruin your name in the industry. All you old customers are working on with us to see you go after them while drunk driving with others."

53. Clearly, the intent of Mr. Waites and Mr. Shubin was to harass, threaten and intimidate Plaintiff, so that they could acquire his clients.

54. Mr. Waites and Mr. Shubin's participation in the harassment, threats and intimidation including the threat they will "come after him" and "Scum, we are already doing everything to ruin your name in the industry" was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community.

55. Plaintiff is entitled to economic damages, including back pay, loss of future pay, and loss of benefits, and damages for mental suffering.

## COUNT V
## INVASION OF PRIVACY
**(Against Defendant Equipmentshare.com, Inc.)**

56. Plaintiff repeats and realleges every allegation contained in paragraphs 1 through 26 of this complaint as though fully set forth at length herein.

57. On July 14th, 2022, Plaintiff was involved in a minor accident in a work vehicle after attending a Rockies Game.

58. The accident did not result in any injuries to the drivers or their passengers. Two Denver police officers responding to the incident did not have any suspicion of intoxication after spending almost two hours with Plaintiff at the scene of the accident. Despite the responding

officers finding no signs of intoxication, Defendant required that Plaintiff submit to a breathalyzer and urinalysis testing. Defendant required Plaintiff to submit to a breathalyzer and urinalysis testing at "Wiz-Quiz," a drug testing facility located at 7585 W. Arkansas Ave in Lakewood, Colorado approximately 27 minutes or 10.8 miles from the scene of the accident.

59. Had there been real suspicion of intoxication, the Defendant should not have required Plaintiff drive to a drug testing facility located approximately 27 minutes or 10.8 miles from the accident.

60. This is supported by the fact that after submitting to the breathalyzer and urine analysis the drug test administrator released Plaintiff because his results were 0.08, which is the legal limit in Colorado. Had there been real evidence of intoxication, the facility would have been required to call an Uber or facilitate someone to pick him up.

61. Plaintiff is entitled to economic damages, including back pay, loss of future pay, and loss of benefits, and damages for mental suffering.

## COUNT VI
## DECLARATORY JUDGMENT

62. Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 26 of this complaint as though fully set forth at length herein.

63. Plaintiff is seeking to obtain a declaration of rights, as to the non-compete employment contract entered with Defendant which is void and fails for lack of consideration.

64. Defendant acted in bad faith by terminating the Plaintiff shortly after he signed the covenant not to compete.

65. To the extent that Defendant entered a non-compete agreement with Plaintiff with the intention of terminating him immediately afterwards, the agreement fails for lack of consideration.

9

66. Plaintiff has suffered damages including lost pay, lost benefits, and emotional distress. Plaintiff is unable to find employment because of the non-compete agreement which has increased his financial losses.

67. Plaintiff requests a declaratory judgment that the non-compete employment contract fails for lack of consideration and is unenforceable and any further relief as this Court deems just and proper.

Date: March 13, 2023

Respectfully submitted,

By: */s/James W. McQuade*
James W. McQuade/Reg. No. 36110
Heckenbach Law, P.C.